Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. To begin with the C.D. Trial Act issue in this case, it's undisputed that there were 33 days between the arrest by Mr. Cherry, or the arrest of Mr. Cherry by federal marshals and his indictment. The parties agree that two of those days are excludable time under subsection H of section 3161. The dispute as to exclusion centers on April 5th, which was the day between the initial appearance and the detention hearing. This Court's cases, including both Wright at 990 Fed Second 147 and Leftenant, both hold that the days of the actual hearings, so the initial appearance and the detention hearing, are excludable as an other proceeding under H1. Neither of those cases excluded the days between the two hearings. Now, in Wright, as it happens, the hearings were on consecutive days. In Leftenant... There's a threshold question here, and your speedy trial violations are supposed to be raised before trial. I'm happy to address the waiver issue first, if Your Honor would prefer. I think so. Okay. So, as we've argued extensively in our brief, the waiver sentence in section 3162A only appears in the remedy provision dealing with speedy trial, speedy trial act violations, and not speedy indictment, speedy trial act violations. If you look sort of sentence by sentence at section 3162A1 and A2 and you compare them, the two actually have a number of differences that suggest that they are read separately. And so the first difference, and the most obvious difference in this case, of course, is the existence of a sentence about waiver at all, which is the fourth sentence. There might be some respects in which they were done separately, but I can't understand why this would be something that would be done separately. I mean, we have a good deal of reason to have these claims raised earlier rather than later. Number one, it leads to a more prompt vindication of a defendant's rights. Certainly, Your Honor, it would have been preferable. Whether it's a motion to suppress or a challenge to a conviction or whatever, you can't just – it wastes everyone's time to sort of wait and see if you're convicted. That's not what happened here, Your Honor. It was a different counsel that noticed the speedy trial act violation. We are Mr. Cherry's third counsel. It wasn't the same lawyer who didn't file it until after trial. Our office was not appointed until sentencing. Ms. Platt, the difficulty I have is that your argument appears to fly in the face of the language of the statute. The waiver clause applies to, and I quote, this section, section 3162, which covers both the speedy trial right and the speedy indictment right. That's the government's position, Your Honor. No, that's the plain – I mean, it appears to be the plain language of the statute. The 3162A2 is a part of section 3162. It is, Your Honor, but the two subsections, A1 and A2, are actually quite different. But you just said subsection. I did, as a matter of clarity, Your Honor. And the use of the word subsection sort of acknowledges Judge Duncan's point. I certainly can't dispute that the language of the statute includes the phrase this section. But, no, that's a very telling use of language that you just used. You just started talking about the two as if they were subsections. And the point is the statute – They are subsection sections. They are subsections. Actually, I think they're paragraphs under that numbering system. Well, I know, but the point is the statute didn't use the word under this subsection. And you did, accurately and candidly. But you, in so using the terminology you used, indicated an agreement with Judge Duncan's point. I don't agree with Judge Duncan's point. I think it's a reading of the statute, but I don't think it's the only reading of the statute. I read the statutory language, so I did not suggest an interpretation of it. I read it verbatim. And I'm looking at it verbatim, Your Honor. I'd like to point out another difference between A1 and A2, which is that – But that's not going to respond to – No, I'm certainly not arguing that A1 and A2 address different things. That's absolutely correct. But it doesn't address the fact that they are part of the same section. So what you would need to do to help me is to explain to me why they're not a part of this section being 3162. Again, Your Honor, I cannot dispute that the language of 3162A2 includes the phrase – it's the last two words of that paragraph – says this section. That's correct. But if you look at the sentence before that sentence, which is the third sentence of A2, it's the factors that a district judge looks at in determining whether or not to dismiss the indictment with or without prejudice. That sentence appears both in A2 and in A1, and it appears in each sentence verbatim. So it is the second sentence of A1, and it is the third sentence of A2. And those two sentences are identical. Under the government's argument, there is no reason to repeat those two sentences. If it's supposed to just apply to the whole section, there's no reason to repeat those sentences verbatim in both A1 and in A2. It's just another reason, that and the requirement of the motion of the defendant. How does that address the point of the plain language of the statute? The point is, Your Honor, that if everything is supposed to apply equally to A1 and A2, there's no reason to repeat one and not the other. So the factors for dismissal with or without prejudice is repeated in A1 and A2, where the waiver sentence is not repeated in A1 and A2. There's no reason to do one of those things one way and the other one the other way. Your argument was made to the First, the Eighth, and the Ninth Circuit, because what Judge Duncan said seems to be what those circuits have said. Well, the Eighth and the Ninth Circuit cases, Your Honor, are Gamboa and Lewis. And our argument was not made, at least it was not addressed in the opinion in either of those cases. Now, the Spagnuolo case… …the position that Judge Duncan has articulated here in the reading of the statute. In those cases, specifically in Gamboa and in Lewis, which are the Eighth and Ninth Circuit cases, the defendant does not appear to have argued that this waiver sentence applies only to speedy trial act violations and not speedy indictment violations. If you wait until a trial is over, what are you complaining about? You've already had the trial. There's nothing not speedy now. Again, Your Honor, there was nothing intentional about the delay of the motion in this case. You have a complaint. You haven't taken me to trial quick enough. You wait until the trial is over. You haven't taken me to trial. You just went to trial. I mean, just intuitively, it just doesn't seem to set right to wait. I understand why you waited, because it's a trial counsel. Maybe that might be an ineffective assistant counsel somewhere. I'm sure that might pop up. I feel certain that's coming if this case doesn't go Mr. Cherry's way. But I'm not sure that speedy trial is it because of the way in which it was presented. It just intuitively, it seems like you kind of missed that boat. It's less than ideal, Your Honor, but it's the case that was presented to me on appeal. Is there language in any other part of the United States Code that we would interpret the way you would have us interpret under this section? I haven't briefed that issue, Your Honor. Our argument is based on the structure of these two particular paragraphs. So your answer is not that you're aware of? Correct. Meanwhile, having urged the court to, again, look at the key differences between those two provisions, I would also note that, as I was saying to Judge Wynn, two of the three cases cited by the government for this proposition did not actually analyze the argument we're making about the lack of the waiver provision in subsection A1 of the... I know you're dying to get to the merits. Could you, I mean, I have a real question with the threshold, but how is the statute violated anyway? So this court's decision in Wright, Your Honor, if you look at footnote 1, it's 990 Fed 2nd 147 at 148 note 1, actually declines to consider whether a motion was pending during the initial appearance and the detention phase, and also declines to decide that issue because the government failed to meet its burden to show that it was. That was in footnote 1. I would add that here there is no evidence on the docket of this case that there was a motion pending on April 5th. On April 4th, there was an initial appearance, the government requested detention, and Mr. Cherry was held. There was then a, you know, Bail Reform Act detention hearing on the 6th, at which point Mr. Cherry was also held. But there's no motion on the docket, if you look at JA 3, pending between those two dates. And in Lieutenant... Is there any dispute that the detention motion in his hearing took place for three days and that the motion was filed on the 4th and actually decided on the 6th? That's not my reading of the docket, Your Honor. There is no indication on the docket of a pending motion on April 5th, and in Lieutenant, which is this court's published decision, there was actually a number of days between the two hearings, and in excluding time under 3161H, this court did not exclude the days between. Now, the issue wasn't addressed, so I don't know if it was raised, but this court excluded dozens of days in Lieutenant, went through an extensive 3161H analysis, and it excluded under Wright the day of the initial appearance and the day of the detention hearing. In that case, my recollection is that the first date was on the 28th and the second date was on the 4th, so there are at least... My math skills are questionable. There's at least five days between those two numbers. In Lieutenant, this court did not exclude those days by assuming that there was some kind of motion pending on those days. And again, if you look at the docket on JA3 in this case, there is no indication of a pending motion docketed in this case, so I would say that there's not enough evidence to show that April 5th should be excluded on the merits. And again, the cases from this court that I would urge you to look at carefully for this proposition are Wright and Lieutenant. Moving on to, if the court doesn't have any further speedy trial questions, I'd like to talk about the comments made by the judge before the jury was polled. Judge Dumas improperly revealed details of Mr. Terry's criminal history to the jury. There's a big threshold problem here. This is up here on plain error. It is. The standard of review is plain error, Your Honor. It's true. But I would argue that this is... It's certainly an error and it's certainly plain. Now, I would argue it affects Mr. Terry's substantial rights. Well, no objection was raised. That's right, Your Honor. But that's what plain error review under Rule 52B is all about. An error that is not objected to can be recognized by this court. That's a steep hill to climb because if there's been an objection raised, then it could have been a corrective, cautionary instruction or whatever. I mean, you've got to let district judges know of something at the time it occurred. The standard of review is certainly plain error, Your Honor. We're not contesting that. But in this case, it does affect Mr. Terry's substantial rights. I mean, again, if... And it's clear you're entitled to a plain error review of this type of error? Yes, Your Honor. I don't think that's not been contested as to this particular error as it was with the Speedy Trial Act error. How could it affect the substantial rights when the jury had already indicated a collective affirmation of the verdict? Well, Rule 31 entitles you to an individual, the word individually is in Rule 31, poll of the jury. And in this case, Judge Dumas inappropriately revealed details of Mr. Terry's criminal history to the jury. Now, my position is that even if he had waited until the verdict was final, it would be inappropriate regardless. At that point, it's less of an objection. But, I mean, district judges should not tell juries that they approve of a guilty verdict. I appreciate thanking jurors for their service, but there's a difference between saying thank you for your time, thank you for your flexibility, and saying, by the way, this person has an extensive criminal history. I don't think anyone is taking issue with that. But the concern that I think is being articulated, or I would articulate, is that I'm not quite sure that it would have affected the trial's outcome or that a remand is necessary in order to maintain the fairness, integrity, or public reputation of judicial proceedings. In other words, I'm not sure that it entitles you to prevail on plain error review. So those are the third and fourth prongs of the Ilano plain error test genre, and I'd be happy to address them. As an initial matter, it is clear in all of the cases, including this court's decision in Carter from 1985, that the right to poll the jury individually is absolute, and it's important. And if you read all the cases, it goes into great detail about that. That isn't what we're disputing, really. There's a huge amount of evidence against this individual, and you have testimony from arresting officers, you have audio and video recordings, you have the fact that he really offered no explanation before the jury for the location or the presence of firearms and narcotics. It's a strong, strong case. You know, Your Honor. And in addition, I guess there was a 922G count, and there was already a stipulation that he had been convicted of possession of a firearm by a convicted felon. And given the strength of the case, and given the stipulation, and given the collective affirmation of the verdict, how has there been a miscarriage of justice here? I mean, I don't approve of the comment, but I don't think it's a plain error review. Your Honor, I see my time has expired. I'd be happy to address the third and fourth Ilano prongs at length on rebuttal, or I can start now if you'd prefer. Sure, thanks. On rebuttal? Yes, sir. Okay. Mr. Capitosto? Capitosto. Ms. Capitosto. Good morning. May it please the Court, having reviewed, again, the defendant's points of error, we would begin with the speedy trial, and we also agree with the Court's analysis that the threshold question is whether he moved for dismissal at the appropriate time, and he did not. Judge Dumas very carefully went through his logic and his reasoning in deciding that under this statute, 3162, the requirement that the defendant move for dismissal wasn't met. And I think in his plain language he said, you can't have your cake and eat it too. Clearly, if he had moved for dismissal, I think the United States would have perhaps behaved differently, or if we agreed that there was an issue, which we don't, we could have moved for dismissal without prejudice and re-indicted. So on that issue, we believe that the defendant should fail. On the second line of argument is that the indictment was untimely because according to the defendant's argument, those intervening days between the time that we move for detention and when the detention hearing was held should not be excluded. Your Honor, defense or appellate counsel said that there is no evidence in the record that there was a hearing pending during that time. I would dispute that. Document 6 in the docket report is an order of temporary detention pending hearing pursuant to the Bail Reform Act, and it specifically says upon motion of the United States, detention hearing is set for April the 6th. So there clearly was a motion pending between the 4th and the 6th, and we would argue, Your Honor, that I hope the court received the two cases that we cited in a 28-J letter from the 5th Circuit and the 8th Circuit, Gonzales-Rodriguez from the 5th Circuit and Moses from the 8th Circuit, which are on all fours on this point. Almost exact set of facts in terms of a motion being made for detention and then being held two days later because under the statute 3142F, you have three days to have the hearing. The Gonzales-Rodriguez case out of the 5th Circuit is, if the court has questions about the fact, it's about a truck driver going over the border in Texas with a load of grapefruits and 300 pounds of meth. He was arrested, had an initial appearance on the 31st of January, and then two days later had another appearance and a motion for detention was made, and the hearing was held two days later. And the 5th Circuit said in that case, the four-day period between February 2nd and 5th, which is the exact same set of facts we have except for a different date, was time consumed in placing the district court in a position to dispose of the government's motion to detain the defendant pending trial. The Moses case from the 8th Circuit, also very similar. I think we understand all this. Yes, sir. What about the other issue? The third issue is, well, it wasn't addressed specifically, but the Woolfoot case. And we would argue that the court can decide this case on the first two premises without even reaching the Woolfoot case, and that is that he failed to move for dismissal and also that the exclusion at that time was because a motion was pending under 3161H. With respect to the second issue, which is the comments made in between the verdict and the polling of the jury, I would agree with Your Honors that it was not the most beneficial thing. However, the judge did. I would argue that we are in plain error, and also I understand the court's argument that when a judge hears an objection, he can cure what happened if he's given the opportunity, and that was not done here. So that's why it's here in plain error? Correct. I would argue that the judge did make the comments about the defendant's prior record, but as the court noted, they had already had evidence that he had a prior conviction for a felony and also that he had been arrested for at least one marijuana charge. So they knew he had a record. It doesn't look like he did that on purpose to do that, and it does appear that the defendant should have objected and just might have forgotten that a polling meeting had been done. But it does strike sort of odd that once he made these statements, and they're pretty extensive statements. Some of it, he put a good history-level lesson there that is rather interesting, and I don't want to get into that, but it would seem that once he realized, even the judge realizes, well, oh, I didn't poll the juror and I've said all this stuff, all he had to say was, well, perhaps you should disregard those comments I've just made there or what were you thinking before? I mean, because really you're just talking about the polling of the juror, and it sort of goes to, well, the juror, are they now influenced by these statements at this point? But be that as it may, you are in plain error. So I'm not sure we need a whole lot of discussion on this difficult issue. I would agree. But even on plain error, I mean, certainly we would be free to say something along the lines of, please don't do this again. I would agree. I had a trial several weeks later, and I made very sure that we didn't. Every now and then the government should object. I know that it's not meaning to suggest that it's your obligation, but if it's going to create issue on appeal, certainly there's something to be said for it. Your Honor, perhaps we should poll the jury now? Correct. And we'll give defense counsel the opportunity to ask for it. I would agree. Again, there was no hesitation amongst the jurors and no discord or no evidence of that. And interestingly, Rule 31D was amended or changed to include that phrase individually, that they should be polled individually. And I found a lot of case law that was pre the change where we had head-nodding and hand-raising. The Harlow and Randall cases were really egregious. I know the defendant cites to them, but I was interested in a writ about them. The Harlow judge, you point out, discussed the case in detail with the jury, told the jury that they rendered a public service on a par with several high-profile criminal cases, and perhaps more egregiously, relayed the substance of a personal conversation he previously had with the lead agent, a witness in the case, concerning the victims in the case, all before polling. I mean, this is inappropriate. There's no question about it. None of us approves of it. But the cases that I actually found reversible there under Randall and Harlow were just awful. I agree, and we certainly didn't get to that. I mean, what the judge was talking about was arguably some 404B. And generally, when that type of evidence gets admitted, there's an admonition of the jury not to consider for the improper purposes. And he kind of used some of that language in what he was saying, so I think the right triggers were going off in his head as he was talking that... I don't know. I don't mean to put myself in his shoes. What will judge DeMars' charms is that he's an expansive and a valuable, wonderful person, but maybe this is not the best thought. I would agree. You can take that home to your office. I would agree. If there's no other questions, I'll give up my time. Thank you. All right, let's hear from you in rebuttal. Thank you, Your Honors. I would like to try to convince you that this did affect substantial rights and the court should exercise its discretion to correct the error because of the fundamental interests at stake. And I think as to that fourth prong, it's judicial reputation and the reputation of judicial proceedings in the public that is the most compelling thing in this case. As a side note, I'd like to note that Judge DeMars' comments about Mr. Terry's criminal record were inaccurate. He actually inflated Mr. Terry's criminal record. Mr. Terry had been convicted of... You're talking about public reputation of the court? Yes, sir. It can suffer in two ways. One is if we allow fundamentally unjust proceedings to stand. It can also suffer if we sort of set the work of jurors and judges and witnesses and a great many other people aside when we're convinced that the trial taken as a whole was fair. And the point is that the public reputation of the judiciary can suffer if we go too far in either direction. Your Honor, in this case, this case was not a slam dunk for the government. I mean, if you look at the jury notes on page 511 of the joint appendix, Mr. Terry's defense was that the items that were found on the ground after his interaction with the police didn't belong to him. He testified at trial and that was his defense. And the jury asked... The comments were made after the jury announced his verdict after there had been a collective affirmation. But not an individual poll, Your Honor. And that goes to, you know, all the cases say, including this court's decision in Carter, that polling is about having every individual juror have a chance in open court to express doubt in their verdict if they have any, and also to ensure that there's no coercion or undue influence being exerted on them in the jury room. And the existence of multiple notes and questions in this case, Your Honor, goes to the fact that at one point at least, not all of the jurors were convinced of Mr. Terry's guilt. They asked specifically if another person was present. The aspect of not objecting, even when it's a plain error, takes on several points here. One being, should the defendant have asked for the poll quicker or was there time for it? I mean, there's a kind of whole issue there. Maybe it's sort of in the middle. Then the question is, when should objections be made? If you made it at the beginning, you could have stopped the comments. Or once you heard it at some point. But then, at the end of it, he doesn't make an objection. So there's several points where the objections could and should have been made, and it's understood as plain error. But at the end, you still can make the objection, or, and then beyond that, you can ask the judge to give an instruction. I would argue, Your Honor, that at this point... At least to give the jury an opportunity, because basically you're concerned, is the jury really telling what they felt? Of course, you've got other people who were in that room. Somebody gets up and says, it was my verdict and everybody else knows it wasn't. I mean, that's a problem. But I mean, that's a whole different issue. But you just don't get that opportunity to do something about this error. An objection would have been preferable. I don't disagree. Several objections is what I'm trying to say, and a number of requests. You've got a problem here. And he's sitting there listening to this. This is right in front of your face. And nothing is happening except you're just letting it happen, and then you sit and listen to every one of these jurors, and in your mind, you're wondering, well, is it influenced by that? But you say nothing. We're obviously trained not to interrupt people on the bench, and so with regard to interrupting Judge Dumas while he was on his charming and lengthy exposition, as Judge Wilkinson noted he's wont to do, we're all trained not to do that, obviously, Your Honor. And with respect to the ability to... But you have an obligation to preserve the record. But assuming... That does go into plain error, but in response to your comment that the evidence was not a slam dunk, I think the evidence was pretty overwhelming. Two police officers gave this detailed testimony about his activities at the traffic stop, the scene from which the guns and drugs were recovered, and it was corroborated by a recording. The only opposing evidence was Cherry's own testimony, which was impeached and uncorroborated, and although you've attempted to sort of suggest that the jury verdict might have been contentious, there's just no real indication of that. They returned the verdict on the same afternoon that it retired, and they asked to see the Taser video again and asked whether there was anybody standing by the vehicle before the officer who recovered the gun arrived at the scene. But there's no other... There's nothing to suggest that this was at all a difficult or contentious issue from the jury's point of view. I think, Your Honor, just quickly, the existence of the notes shows that it wasn't a slam dunk for the government, and I think that's analogous to this court's decision in Ibasovich. And just to go to the potential for a cure, if the point is to allow jurors to express doubt, once a district judge, with his impromptu of impartiality and credibility, has said, basically, I approve of your verdict, we would argue that no juror is going to express any doubt or incidence of coercion, which is the entire purpose behind Rule 31. Although the jury foreman had already... had not just... the jury hadn't just given that collective verbal affirmation. The jury foreperson presented a signed verdict form. Signed by him, but not signed by each individual juror, Your Honor. Signed by the foreman. Correct. As the foreman. Thank you very much for your time. Well, we thank you very much. We'd like to come down and say hi to you.
judges: J. Harvie Wilkinson III, Allyson K. Duncan, James A. Wynn, Jr.